## REUBEN MACOMBER v. JAMES E. SCOTT.

1. EVIDENCE; HANDWRITING; *Genuineness of Signatures; Experts; Comparison.* Where a party is sued on a promissory note which purports to have been signed by him, and he by his answer denies the execution of the note, and where two letters written and signed by him are introduced in evidence to show what he has said with regard to the note, *held*, that an expert who has no knowledge of the defendant's handwriting may testify as to whether in his opinion the signature to the two letters and the signatures to the note were all written by the same person.

2. —————— And where two signatures are admitted by the defendant to be genuine, said signatures may be introduced in evidence for the mere purpose of comparing them with the signature to the note; and an expert who is "not sufficiently acquainted with the handwriting of the defendant to recognize it" may testify as to whether in his opinion

said signatures and the one affixed to the note were written by the same person.

3. ———— *Inspection and Comparison by Jury.* Upon the trial of an issue involving the genuineness of a signature of a party, such disputed signature, and signatures of such party admitted by him to be genuine, may be examined by the jury for the purpose of comparing them and of determining whether the one disputed and denied is genuine or not.

### *Error from Douglas District Court.*

SCOTT brought his action upon a promissory note dated May 8th 1867, purporting to be executed by Christian Yeager and *Reuben Macomber.* Yeager was not found, and *Macomber* answered, denying the execution of the note.* The action was tried at the February Term 1872. The plaintiff gave in evidence two letters written by *Macomber* to Christian Yeager, in regard to the note and the claim of the plaintiff. These letters were dated respectively Oct. 31st, 1870, and Nov. 7th, 1870. Their genuineness was admitted by *Macomber.* Plaintiff also produced two other letters, both dated Oct. 25, 1870, and proved by *Macomber* that his signature to each was genuine. The signatures of Macomber to these last two letters were given in evidence. Witnesses were called and examined, after inspecting and comparing the disputed signature and those admitted to be genuine; and all the signatures were exhibited to the jury. Verdict and judg-

[* THE affidavit verifying the answer, after the title and venue, is as follows:

"Reuben Macomber, being first duly sworn, deposes and says, that he is one of the defendants in the above entitled action, and that *the facts* set forth in his answer in the above entitled action are true."

The sufficiency of this verification was not questioned in the district court, nor in this court; but the case was tried as if the *truth of the answer*, or as if the *execution of the note*, were directly denied. But *query :* Was the execution of the note denied by the defendant under oath? The "answer" denied the making of the note; but was *its truth*, that is, the truth of *the answer*, denied? The verification was, that *the facts* set forth in his answer were true. Suppose that there were no "facts" set forth or stated in the answer, how then? If the answer was wholly *false*, then it "set forth" no *"facts"* —and it was only "the *facts set forth*" that was sworn to be true. Suppose a pleading contains several distinct averments, one-half of which are true, and the other half of which are false: will an affidavit which states that "*the facts* set forth" in such pleading "are true," be a sufficient verification that the pleading, "and each and every matter therein stated and alleged, is true?" "Facts" are always "true." The statute does not require a party to swear that facts are true, but it does provide that certain "allegations" shall be taken as true unless such "allegations" are denied under oath. Code, §108. In other actions it is "the petition," (not the *facts* stated in the petition,) which is to be "verified as true." Code, §641.—REPORTER.]

ment for plaintiff. New trial refused, and *Macomber* brings the case here on error.

*Thacher & Stephens* for plaintiff in error:

1. This action turned upon the question of the genuineness of the signature to the note sued on. The plaintiff below introduced witness Hadley — an expert in handwriting — who was allowed to testify as to his opinion with respect to the signature in question having been written by the same person as the signatures to other writings shown to witness. On cross-examination witness testified that he never saw defendant (plaintiff in error) write, and was unacquainted with his handwriting. The defendant then moved the court to strike out the testimony given on the direct. The object of this motion was to raise the question of the competency and relevancy of the testimony, and if incompetent, to expunge it from the record. The record shows that the court " decided that it refuses to entertain the motion, and no further action of the court was had." This, it is deemed, was clearly erroneous. *Williams v. Eldridge,* 1 Hill, 253; 19 Johns., 259; 18 id., 232; 7 Cow., 363; 3 Mich., 475. The plaintiff in error had a right to have his motion decided, whether the evidence was competent or incompetent. But the testimony was incompetent and illegal, and ought to have been stricken out. The same principle is involved in the exception to the proceeding of the counsel for plaintiff below in exhibiting to the jury the signatures for comparison.

2. Witness Chester was allowed to compare the questioned signature with the signatures found on letters, the contents of which were in evidence, and also with letters the contents of which were not in evidence, and to state to the jury his opinion as to their having been written by the same person; and afterwards the jury were allowed to examine and to compare the signature in question with the signatures to such letters. This was error. The following cases we have examined, which hold substantially that "the opinion of a witness founded solely upon the juxtaposition and examination

of two writings as to whether or not they were written by the same person, is inadmissible:" *Jackson v. Phillips*, 9 Cow., 94; *Wilson v. Kirkland*, 5 Hill, 182; Denio, 343; 13 Barb., 42; 2 Johns. Cas., 211; 5 Johns., 144; 14 N. Y., 442; 11 Adolph. & Ellis, 322; 14 Wis., 9; 6 Pet., 767; 12 Wall., 320; 21 Ill., 407; 4 Wash. C. C., 729; 3 Gilm., 644. The authorities *pro* and *con* are collected in 1 Phil. Ev., 609, Cow. & Hill's Notes, No. 483. Against the admission of this class of testimony are the courts in England, the United States Supreme Court, New York, Virginia, New Jersey, Kentucky, Circuit Court of U. S. in Penn.; New Hampshire; Circuit Court of Districts of Rhode Island and Illinois.

The cases touching upon a comparison by the jury are equally strong. See *Van Wick v. McIntosh*, 14 N. Y., 442. In at least one case comparison by the jury is held error, even though such comparison by an expert acquainted with the handwriting of the person, is held good: *Rogers, Adm'r, v. Shaler*, Anth., N. P., 109. The reason for the rule is, that the handwriting of a person may be changed by age, health, habits, state of mind, position, haste, penmanship and writing materials, (1 Denio, 346,) and specimens may be selected for comparison that would lead to erroneous conclusions. The reasoning and the great weight of authority is in favor of the rule as stated. The only exception to the rule recognized is, when the signatures are *ancient*, and it is impossible for living witnesses to swear that they ever saw the party write. *Strother v. Lucas*, 6 Pet., 763, and 12 Wall, 320. No such exception exists in this case.

*Smith & Hampton*, for defendant in error:

1. There was no error in allowing the plaintiff to introduce the testimony of experts, and giving the jury the benefit of their opinions as to the genuineness of the disputed signature. 2 Phil. Ev., 608, 626.

2. There was no error in allowing the comparison of handwriting. *Sheldon v. Benham*, 4 Hill, note 6, p. 131; *Stone v. Hubbard*, 5 Cush., 595; 30 N. Y., 355, 361; 17 Pick., 490;

McCord, 518; 5 Binney, 340; 10 Serg. & Rawle, 110; 3 N. H., 47; 9 La., 559.

3. There was no error in allowing the jury to compare the disputed signature with signatures admitted to be genuine: 19 Ohio, 426; 5 Foster, (N. H.,) 87; 16 Georgia, 521; 21 Vt., 256; 3 N. H. Rep., 47; 14 Ohio St., 222, 505; 25 Maine, 78; 7 Cush., 595; 40 Barb., 556; 57 Penn. St., 438.

The opinion of the court was delivered by

VALENTINE, J.: This was an action on a promissory note. Defendant below, Macomber, denied the execution of the same; and the principal question at the trial was whether Macomber signed the note or not. It purported to be signed by him, and the question was whether the signature was genuine. Two letters written and signed by Macomber were introduced in evidence to show what Macomber had said about the note. Afterward a witness, W. Hadley, was examined on the part of the plaintiff. He was first shown to be an expert in the examination of signatures. Then the signature to the note and the signatures to the two letters were shown to the witness, and he was asked whether he thought they were written by the same person. The defendant objected to the question on the ground that the evidence it would elicit would be incompetent. The court overruled the objection and the defendant excepted. The witness then answered that it was his opinion that the signatures were all written by the same person. The record shows that afterward—

"On cross-examination the witness testified: 'I never saw defendant write, and am not acquainted with his signature.' The defendant then moved the court to strike out the testimony of witness Hadley for the reason that it now appears incompetent. The court decided that it refuses to entertain the motion, and no further action of the court was had; to which refusal to entertain the motion and decision the defendant then and there excepted."

Of course the court erred in refusing to entertain the motion. The question raised on this motion was different

from the question raised on the objection to the evidence, and was raised in a different manner. On cross-examination it appeared affirmatively that the witness had never seen the defendant write, and was not acquainted with his signature. This did not so appear on the examination in chief. This, according to some of the authorities, is a very important distinction. According to some of the authorities such evidence is admissible where the witness is acquainted with the party's handwriting, and is not admissible where the party is not acquainted with the same. We have given the substance of all of witness Hadley's testimony. The said error of the court was however immaterial. If the court had entertained the motion it should have overruled the same. All the signatures that the witness Hadley examined and compared were already properly in evidence for other purposes. And, however great the conflict of authority may be upon certain questions connected with the "comparison of hands," we think that there is no conflict of authority at the present day where the different instruments to be compared are already properly in evidence for other purposes. In such a case Prof. Greenleaf says "the comparison may be made by the jury, with or without the *aid of experts.*" (1 Greenleaf Ev., § 578, and cases there cited.) The question however as to whether signatures can be introduced in evidence merely for the purpose of comparing them with the signature in dispute is fairly raised in this case in other portions of the record. Two such signatures were introduced in evidence over the objections of the defendant. And the witness H. W. Chester, who was also an expert, was allowed, over the objection of the defendant, to express his opinion as to whether all the signatures were written by the same person, although he was "not sufficiently acquainted with the handwriting of the defendant to recognize it." And the jury were also allowed, over the objections of the defendant, to examine all these signatures for the purpose of comparing them, and determining whether the one in dispute was genuine or not. Now, as there is such a great conflict of authority upon questions connected with

the "comparison of hands," whatever we may say in this opinion we do not wish to be understood as deciding anything not necessary to be decided in the case.   We suppose that it may be laid down as a general rule, that all evidence that proves or tends to prove the issue in any particular case, anything that forms a link in a chain of circumstantial evidence that proves or tends to prove such issue, is admissible, subject perhaps to some exceptions, and subject perhaps to a discretion in the court in •some cases to exclude evidence of·very remote facts or circumstances when more proximate facts or circumstances can be produced.   What we wish more particularly here to say is, that to exclude any evidence that proves or tends to prove the issue in any case is the exception, and not the rule.   And we would further say that before an exception can be allowed to a general rule there must be some good reason for the exception.   We suppose that it will not be claimed that the evidence in this case does not tend to prove the issue, or that it is wholly irrelevant; but it will be admitted that if it is competent it is also relevant, and tends to prove the issue.   Therefore, if it is excluded it must be for some good reason.   It therefore becomes necessary for us to examine the reasons given for excluding this kind of evidence.   It will not be claimed that such evidence should be excluded merely because it is a comparison of hands; for all evidence of handwriting, except where the witness himself has seen the writing itself done, is, in its nature, a comparison of hands.   It is the belief which the witness entertains upon comparing the writing in question with the exemplar in his mind derived from some previous knowledge, of the party's handwriting.   That evidence of this kind may be introduced in many cases, is too well established to be even questioned by any one at the present day. It will generally be conceded that comparisons may be had between writings in the following cases: where the writings to be used as specimens are admitted to be genuine, and generally where no collateral issues can arise; where the different writings are already properly in evidence, or properly in the

case for some other purpose; where the witness has seen the person whose signature is disputed previously write, although it has been only his name; where the witness has personal knowledge of the person's writing from some other proper source, as from having seen writing which the person in the course of business has acknowledged to be his, or has acted on as his, etc.; where writings are of such antiquity that living witnesses cannot be had to prove them, and such writings are not so old as to prove themselves; and probably in many more cases which we might mention. The principal if not the only objections urged against this kind of evidence are as follows: 1st, The writings offered in evidence as specimens may be manufactured for the occasion; 2d, Fraud may be practiced in the selection of the writings offered in evidence as specimens; 3d, The other party may be surprised; he may not know what documents are to be produced, and therefore he may not be prepared to meet the inferences sought to be drawn from them; 4th, The handwriting of a person may be changed by age, health, habits, state of mind, position, haste, penmanship, and writing materials; 5th, The genuineness of the specimens of handwriting offered in evidence may be contested, and others successively introduced, to the infinite multiplication of collateral issues, and the subversion of justice; 6th, Juries are too illiterate, and are not competent to judge of this kind of evidence. Many of these objections can have scarcely any application in this case. *First:* It can hardly be supposed that a party would manufacture signatures to be used against himself. *Second:* When a party raises the issue himself of the genuineness of his own signature he ought to be able to explain all his own signatures that might be introduced, and to show just how his own genuine signature should appear on paper. *Third:* He should not be surprised in such a case. He above all others should know what evidence might be introduced concerning his own signature. *Fourth:* He ought to know all the changes in his own signature, and be able to explain them. *Fifth:* No question regarding collateral issues could be raised in this case, for no question was raised upon

the genuineness of the signatures introduced in evidence for the purpose of comparison. Two of the signatures were rightfully introduced for other purposes, as well as for comparison, and upon competent evidence. The other two signatures were introduced on the testimony of the defendant himself, he stating that they were genuine. *Sixth:* Our juries are selected from educated and intelligent citizens, and the rule adopted in England or elsewhere for juries that could not read writing has no application in Kansas where the juries can read writing and are able to form intelligent opinions concerning it. The question concerning a party manufacturing his own signatures, to be used in his own favor, or fraudulently selecting them in such a case, or changing his hand in any manner, or surprising the other party in such a case by the introduction of his own signatures, is not in this case. Nor is there any question raised in this case concerning the signature of a third person not a party to the suit. Nor is there any question in this case whether a signature, the genuineness of which is contested, or upon which a collateral issue may be raised, can be introduced in evidence for the purpose of a comparison of handwriting. Nor is there any question concerning the power of an ignorant and illiterate jury to compare different writings. Nor is there any question raised in this case concerning the power of a party to prove by a comparison of handwriting the genuineness of a signature, the genuineness of which is not put in issue by the pleadings. And as none of these questions are raised in this case we do not attempt to decide them. We simply decide the questions in this case. Prof. Greenleaf, in speaking of the methods of proving the genuineness of a writing by comparing it with other people's, uses the following language: "By offering such papers to the jury, with the proof of their genuineness, and then asking a witness to testify his opinion, whether those and the disputed paper were written by the same person. This method supposes the writing to be generally that of a stranger; *for if* it is that of the party to the suit, and is denied by him, the witness may well derive his knowledge from the papers admitted by that

party to be genuine, if such papers were not selected nor fabricated for the occasion." (1 Greenl. Ev., § 579.) It is our opinion that all the evidence with regard to the signatures was properly admitted, and the jury properly allowed to examine all of these signatures for the purpose of comparing them, and of determining whether the one affixed to the note was genuine or not. The judgment of the court below must be affirmed.

All the Justices concurring.