A. J. BRIGGS v. HENRY F. BROWN *et al.*

REVIEW—*Conflicting Evidence.* It is a well-established rule of the supreme court that the findings and judgment of a trial court will not be disturbed if there is sufficient testimony to sustain them, although the testimony introduced upon the trial is very conflicting.

*Error from Norton District Court.*

THIS was an action brought by *A. J. Briggs* to foreclose a mortgage of $1,300, given by *Henry F. Brown* and wife to Alexander M. Freelove, on the northwest quarter of section 30, in township 1, range 21, in Norton county in this state, and which had been transferred by Freelove to Briggs. All the defendants, except Geo. I. Thompson and wife, and the Nebraska and Kansas Farm Loan Company, made default. Thompson and wife pleaded payment and satisfaction of the $1,300 mortgage, and this was the only question tried by the court. The case was tried without a jury. The following written stipulation of the parties was presented upon the trial and filed:

"On and previous to February 20, 1886, Henry F. Brown, one of the defendants herein, was owner of the real estate described in plaintiff's petition. On said day the said Brown and his wife executed and delivered to A. M. Freelove a mortgage upon said real estate to secure the payment of $1,300. Said mortgage was filed for record in the proper county and duly recorded upon the same day that it was executed. Said mortgage is the one being foreclosed in this action.

"On January 5, 1887, said Brown and wife conveyed said real estate to the defendant George I. Thompson, by warranty deed reciting that said conveyance was subject to a mortgage for $500. Said deed was duly filed and recorded January 15, 1887. On said 5th day of January, 1887, said mortgage of $1,300 was not satisfied of record."

The court found in favor of Thompson, that he recover his costs. Briggs excepted, and brings the case here.

*John R. Hamilton,* for plaintiff in error.

*C. D. Jones* and *Wheeler & Switzer,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The only question presented in this case is, whether the judgment is sustained by sufficient evidence. On January 4, 1887, before Brown and wife conveyed the real estate to George I. Thompson, embraced in the $1,300 mortgage from Brown to Freelove, the latter wrote the following letter:

"LEBANON, KAS., January 4, 1887.
*"Mr. Fisher, Cashier Bank of Almena:*

"DEAR SIR — Mr. H. F. Brown has seen me, and I will make the transfer of the mortgage from the farm to the property in town, as I understand it is the one-half of the Thompson barn and lot, and 11 head of horses, and 6 buggies and 6 sets of harness. I will be home on Saturday night, and will either come up myself on Monday, or send release so the transfer can be made.

Truly yours, A. M. FREELOVE."

Just before Thompson's purchase, Brown showed to Thompson the letter of Freelove of January 4. Thompson testified, among other things, as follows:

"Ques. Did you buy the land [described in the mortgage] subject to that [Freelove's] mortgage? Ans. No, sir.

"Q. Tell why you did n't purchase subject to that mortgage? A. When Brown approached me for a trade — I bought it with my barn property in Almena. I knew of the mortgage, and told him if he would see Freelove and have him remove that mortgage I would give him a trade, and he went to see Freelove.

"Q. On what did you act then? A. A letter purporting to have been written by Freelove to Albert Fisher, of Almena.

"Q. Look at this letter and see if that came under your observation at that time. A. Yes, sir. Fisher produced this letter and read it to me, stating what Freelove agreed to do, and I made the trade for the land."

It seems to be admitted that the mortgage of $1,300,

dated February 20, 1886, from Brown and wife to Freelove, upon the land sold to Thompson, was given to secure the purchase of a horse named "La Perch." On November 20, 1887, Freelove wrote and sent the following letter to Brown:

"*Dear Sir*: If you are dissatisfied with La Perch, bring him down and I will take him. I think I can sell him to that man that was wanting a horse when you were here. My horses that I have now are rather too large for him. I can sell him and get the money out of him sooner than you can pay; so bring him down, and come so you can stay in the barn for me a few days till I make a short trip south. Now, if you want me to take him, bring him right away. Truly yours,                    A. M. FREELOVE."

Soon after Brown returned the horse to Freelove, and Freelove gave to him a receipt in satisfaction of the $1,300 mortgage. Both George I. Thompson and C. D. Jones testified to seeing the receipt and the contents thereof. Thompson testified, among other things, as follows:

"Ques. When and where did Henry Brown show you this receipt from Freelove? Ans. He showed me the receipt at my house when he returned; he showed me the receipt in Almena, and here in Jones's office in Norton.

"Q. What did that receipt say? A. I cannot word it, perhaps, just as it was.

"Q. Give as near as you can the wording of that receipt. A. They had received La Perch.

"Q. What was the contents of that receipt? A. I could not give you just the contents. It stated they had received the horse in payment and satisfaction of the debt.

"Q. Was that all there was to it? A. I do n't know as it was.

"Q. What was the date of the receipt? A. I could not tell you that.

"Q. Who was it signed by? A. A. M. Freelove."

Jones testified, among other things, that:

"Ques. State whether or not you are acquainted with Brown. Ans. Henry F. Brown? Yes, sir.

"Q. State whether you ever saw a receipt from him or to him from Freelove, and, if so, state the contents of that

receipt. A. He came into my office stating that he had returned this horse, La Perch. He had talked to us considerably before this — to both of us, and came to advise with us especially about the transfer of the mortgage from that land onto his personal property. He showed a receipt there for his horse in controversy, La Perch, from Freelove, executed to him, showing the horse was received by Freelove in satisfaction of the mortgage of $1,300.

"Q. Who was the receipt signed by? A. By A. M. Freelove.

"Q. Was it signed by A. M. Freelove or Alexander M. Freelove? A. I don't know about that certain. It was Freelove. I compared it with these letters.

"Q. Give as near as you can the language of that receipt. A. I remember that part of it distinctly. It was a receipt of the horse in satisfaction of the $1,300 mortgage. I could not say — that may have been all there was to it. I don't know.

"Q. What was that? A. That La Perch was received back in full satisfaction of the $1,300 mortgage."

Freelove denied executing the receipt testified to by Thompson and Jones, and also attempted to explain his letter of January 4, 1887, promising to release the mortgage. His evidence, and that of his witnesses, was to the effect that before he was to give any release he was to have a chattel mortgage executed by Brown, which was never accepted, because the title and the value of the property therein described were not satisfactory. At the time Jones examined the receipt from Freelove, he compared it with Freelove's letters, which were admitted to be genuine. Therefore there was some evidence to prove that Freelove wrote the receipt. (*Macomber v. Scott,* 10 Kas. 335.) While the evidence of the witnesses was conflicting, the trial court was the judge of the weight and credibility thereof. Again, the evidence of Freelove, concerning the sale of La Perch and another horse, was not very satisfactory. He admitted that he received La Perch from Brown, but claimed he took possession under a chattel mortgage, and that he subsequently sold La Perch and another valuable horse under the mortgage for $475.

These two horses were sold by Freelove to Brown for $2,300. Freelove testified:

"Ques. Who bought these stallions at these mortgage sales? Ans. Mr. McLaughlin.

"Q. Where does he live?  A. I could not tell you now; he lived there at the time.

"Q. How long did McLaughlin keep them?  A. He did n't have them very long.

"Q. About how long?  A. Perhaps two or three days.

"Q. Did he change them from your barn?  A. No, sir; he did n't take them out of the barn.

"Q. How much money did he pay you?  A. He paid the amount that is indorsed on here, which I think is $475.

"Q. How much did you pay him for the horses back? A. I paid him what he gave.

"Q. Did he pay you over the money?  A. He paid the money to Davis [the attorney of Freelove].

"Q. You handed him back the amount, whatever it was? A. Yes, sir; I paid him the amount he paid for them.

"Q. The same amount?  A. Yes, sir; I think so."

Evidently the trial court regarded such evidence with suspicion. There is no "innocent purchaser" in this case, and Briggs stands in the shoes of Freelove. As we are not to pass upon the preponderance of evidence, we think there was sufficient before the trial court to support its findings.

The judgment will be affirmed.

All the Justices concurring.