## THOMAS W. GAUNT v. K. W. HARKNESS.

1. HANDWRITING, *Experts in — Submission of False Signatures.* On the trial of an action on a promissory note, where the principal issue is as to the genuineness of the defendant's signature thereto, it is error to permit the defendant to present to plaintiff's witnesses, who are called to testify as experts, false signatures to notes, prepared for the purpose of testing the ability of the witnesses to detect a forgery, and to cross-examine such witnesses as to such false signatures, and thereafter to introduce such signatures in evidence and prove by another witness the fact that he wrote them himself.

2. ——— *Comparison of Handwritings — Rule — Cross-Examination.* The rule that writings to be used as a basis for the comparison of handwritings must be admitted to be genuine by the party against whom they are sought to be used, or at least clearly proven to be so, applies as well to writings used on the cross-examination of witnesses as on the direct.

*Error from Linn District Court.*

ACTION by *Gaunt* against *Harkness* to recover on a promissory note. Judgment for defendant. The plaintiff brings the case here. The opinion states the facts.

*Keeler, Welch & Wagener,* for plaintiff in error; *E. S. Jones,* of counsel:

This court has gone only to the extent of saying that papers signed by the party, and already in evidence for other purposes, and signatures admitted to be genuine, may be used by the jury and by experts for the purpose of comparison to determine handwriting. (*Macomber v. Scott,* 10 Kas. 335; *Joseph v. National Bank,* 17 id. 256; *Abbott v. Coleman,* 22 id. 250; *The State v. Zimmerman,* 47 id. 242, 245.)

In some states the law prescribes that proof of standards of comparison may be made to the satisfaction of the court, and then the jury and experts may properly make comparisons. In the absence of such a statute, the question naturally arises, "What is an admitted signature?" This question is well answered by the supreme court of Indiana in *Shorb v. Kinzie,* 80 Ind. 500. See, also, *Cox v. Dill,* 85 Ind. 334; *Walker v. Steele,* 121 id. 436; *Swales v. Grubbs,* 126 id. 106.

In *Rose v. National Bank,* 91 Mo. 407, the court says:

"The rule which excludes extrinsic papers and signatures is substantially the same in direct and cross-examination, as will be seen from the foregoing authorities. Papers not a part of the case and not relevant as evidence to the other issues are excluded, mainly on the ground that to admit such documents would lead to an indefinite number of collateral issues, and would operate as a surprise upon the other party, who would not know what documents were to be produced, and hence could not be prepared to meet them. The reason of the rule applies to the cross-examination with as much force as to the direct examination. The signatures should have been excluded, whether used to test the witness as an expert, or to test his knowledge of the handwriting of plaintiff. We cannot say the evidence did no harm. The error was in the reception of evidence on the only disputed fact in

the case, and the judgment must be reversed and the cause remanded."

See, also, *Bank v. Robert*, 41 Mich. 710; *Massey v. Bank*, 104 Ill. 327; 78 Ind. 64; *Edmonston v. Henry*, 45 Mo. App. 346; *People v. Parker*, 34 N. W. Rep. 720, and note; *The State v. Kerrity*, 5 S. E. Rep. 328; *Van Wyck v. McIntosh*, 14 N. Y. 439; *Sankey v. Cook*, 82 Iowa, 125; 33 N. E. Rep. (Ind.) 657; *Tucker v. Kellogg*, 28 Pac. Rep. (Utah) 870; 1 Greenl. Ev., §§ 578–581.

*James D. Snoddy*, for defendant in error :

Complaint is made because forged signatures, purporting to be the signatures of Harkness, were submitted to the plaintiff's experts, and that, after they had sworn that such forgeries were genuine signatures of the defendant, the defendant proved they were forgeries, and thus showed that their testimony upon which plaintiff relied was worthless. This is the first time that we have ever heard of a party coming into this court and complaining because false testimony which he gave was proven to be false. His position is, that, to an expert witness, none but admitted genuine signatures may be shown for the purpose of comparison, because to show the expert another is to raise a collateral issue. Suppose it does: what harm is there in raising a collateral issue and determining it, if it be necessary so to do in order to discover the truth. Does not the very fact of putting a witness upon the stand as an expert raise a collateral issue? Evidence must be offered that he is an expert. The opposite party certainly may cross-examine him as to his qualifications as an expert, and certainly may offer proof to show that he is not an expert. Is not this a collateral issue? To test the truthfulness of the expert's statement, "that by comparison with admitted signatures he is able to testify what are and what are not genuine signatures," the party against whom he is called may submit forgeries to him as well as genuine signatures. If he swears the forgeries are genuine signatures, then it is clear that he is mistaken as to his skill.

When the practice of comparison is once allowed, there is no way, except by arbitrary injustice, to prevent forged signatures being presented to the expert. The expert is prepared beforehand for the testimony he gives, by being shown the instrument which is claimed to be genuine and alleged to be forged. He is shown genuine signatures, and if he answers that upon comparison he is able to say the disputed signature is genuine, he is called by the party; if not, he is not called. The question raised by submitting the forged signatures is as to the capacity of the expert to determine by comparison what is genuine and what is false. Who raises that issue? Certainly the party who offers the expert testimony. It cannot be claimed that a party against whom a witness is testifying can be concluded by the naked statement of the witness, "that by comparison he can discover genuine and false signatures," and if he cannot be thus concluded, then it follows that a collateral issue is raised. In the trial of this action, we successfully showed, by submitting these forged papers, that the witnesses against the defendant, who said they were experts, were only unskillful guessers, and that their testimony as to the genuineness of the forged contract was not entitled to credence. For the purpose of testing the ability of an expert to determine by comparison whether a disputed signature is forged or genuine, forged and genuine signatures may be submitted to the expert, and he be required to state which are forged and which are genuine.

However, in this action, this question, if it is an error, is what has been denominated "harmless error," for, entirely aside from thus showing the want of capacity of the plaintiff's experts, the defendant showed, by the testimony of Harkness, Hall, Sellers, Manlove, Eaheart, Long, Moore, Simmons, Ackerman, and Moody, that the signature of Harkness to the contract sued upon was a forged signature. There is abundance of evidence by which the verdict is sustained.

The opinion of the court was delivered by

ALLEN, J.: Thomas W. Gaunt brought this action, declaring on a promissory note for $1,500, which he alleged was executed by the defendant on the 23d day of January, 1889, due in one year, payable to J. S. Beckwith, or order, and by Beckwith duly indorsed to the plaintiff. The defendant answered, denying the execution of the note, and also denying that the plaintiff was a purchaser in good faith and for value. The case was tried with a jury, and the principal issue was as to the genuineness of the defendant's signature to the note. Many witnesses were examined as experts, and testified from a comparison of handwritings as to the signature on the note. On cross-examination of the witnesses for the plaintiff, they were shown a number of papers to which the name of the defendant was attached, which were not in evidence in the case, and concerning the genuineness of the signature to which no evidence had been introduced, and they were asked to give their judgment as to the genuineness of such signatures from a comparison with those already in evidence, and admitted by both parties to be genuine. Over the objection of the plaintiff, the witnesses were required to answer the questions. Afterward, the defendant placed L. R. Sellers on the stand as a witness, and proved by him that certain of the signatures so used on cross-examination were written by himself. The plaintiff's experts had been deceived by these counterfeits, and some of them had expressed the opinion that they were genuine.

The principal claim of error in the case is based on the mode of cross-examination allowed by the court. That the failure of plaintiff's witnesses to detect the forged signatures submitted to their inspection must have tended strongly to detract from the force of their testimony is apparent, and if it was error to permit the use of papers prepared for the express purpose of breaking down the testimony of these witnesses, the error is so material as to require a reversal of the judgment. Probably there is hardly any rule as to the in-

troduction of evidence on which courts express a greater diversity of opinion than that relating to the proof of handwriting by comparison. (1 Greenl. Ev., § 576.) It has frequently been said that the value of expert testimony is but slight, yet, inasmuch as business transactions in endless number and of great importance are carried on wholly on the faith of a recognition of signatures, it cannot be said that the testimony of experts accustomed to act on their recognition of the handwriting of persons with whom they deal is without weight. It is said in some of the earlier cases that the rule in the English common-law courts prior, to the act of parliament making such evidence admissible, was, that evidence by comparison of handwriting could not be allowed as independent proof, unless in relation to ancient writings, concerning which an exception was allowed, and there are cases in this country upholding this doctrine. (*Berryhill v. Kirchner*, 96 Pa. St. 489; *Strother v. Lucas*, 6 Pet. 763; *Kirksey v. Kirksey*, 41 Ala. 626; *Kinney v. Flynn*, 2 R. I. 319.) The admissibility of such testimony has been considered and sustained by this court in various cases. (*Macomber v. Scott*, 10 Kas. 335; *Joseph v. National Bank*, 17 id. 256; *Abbott v. Coleman*, 22 id. 250; *The State v. Zimmerman*, 47 id. 242.)

In England now, and in all of the United States, the testimony of experts seems to be admitted by the courts. The divergence of opinion in the various tribunals is mainly as to the basis of comparison. In some states it is held that comparison can only be made with other papers already in evidence in the case. (*People v. Parker*, 34 N. W. Rep. [Mich.] 720; *Randolph v. Loughlin*, 48 N. Y. 456; *Hayes v. McDermott*, 82 id. 41; *Yates v. Yates*, 76 N. C. 142.) In other states it is held that comparisons may be made with writings introduced in evidence solely for the purpose of comparison, but that the genuineness of such writings must be admitted by the party against whom they are used; (*Dietz v. Bank*, 37 N. W. Rep. [Mich.] 220; *Wagoner v. Ruply*, 69 Tex. 700; *Shorb v. Kinzie*, 80 Ind. 500; *Merritt v. Strong*, 33 N. E. Rep. 657;) while in others it is said that writings with

which comparisons may be made must be admitted or proved to be genuine. Where the latter rule prevails, it is generally said that the proof must be strong and clear, and sometimes that the genuineness must be proven clearly and beyond a reasonable doubt. (*Bragg v. Caldwell*, 19 Ohio St. 407; *Pavey v. Pavey*, 30 id. 600; *Richardson v. Newcomb*, 21 Pick. 315; *Winch v. Norman*, 65 Iowa, 186; *Commonwealth v. Coe*, 115 Mass. 481; *Rowell v. Fuller*, 59 Vt. 688; *Hanriot v. Sherwood*, 82 Va. 1; *Sankey v. Cook*, 82 Iowa, 125.

It is urged by counsel for the defendant in error that it was proper to test the capacity of the plaintiff's expert witnesses to detect a forged signature in the manner resorted to in this case, and that for that purpose signatures designed to deceive may be used; that the failure of the witness to point out which are genuine and which forged signatures conclusively shows that he is not an expert, and therefore his testimony is not to be credited. No cases are cited by him in support of this position. The only case we are able to discover which in any manner upholds that position is that of *Thomas v. The State*, 103 Ind. 419. No authorities are there cited, and there is not enough stated in the opinion to give a clear idea of the question ruled on in that case. 1 Wharton, on Evidence, § 710, seems also to support that view. On the other hand, the question has been fully considered in neighboring states, and such mode of examination held inadmissible. In the case of *Rose v. National Bank*, 91 Mo. 399,

"The cashier testified that he knew the plaintiff's handwriting. He examined the disputed check and several other checks then in evidence for other purposes, and conceded to be genuine, and stated that the signatures to all of the checks were in the handwriting of the plaintiff; that they were all alike. On cross-examination, counsel for plaintiff placed before the witness the name of W. P. Rose, written upon two blank checks, concealing from his view the other portions of the checks, and asked him in whose handwriting these signatures were. Witness answered that if checks signed as these were were presented to the bank, he would pay them as Rose's checks. Plaintiff, in rebuttal, called another person, who

stated that he wrote the name of W. P. Rose on the blank checks during the progress of the trial."

After reviewing the authorities, the court says:

"The rule which excludes extrinsic papers and signatures is substantially the same in the direct and cross-examination, as will be seen from the foregoing authorities. Papers not a part of the case and not relevant as evidence to the other issues are excluded mainly on the ground that, to admit such documents would lead to an indefinite number of collateral issues, and would operate as a surprise upon the other party, who would not know what documents were to be produced, and, hence, could not be prepared to meet them. The reason of the rule applies to the cross-examination with as much force as to the direct examination. The signatures should have been excluded, whether used to test the witness as an expert or to test his knowledge of the handwriting of the plaintiff. We cannot say the evidence did no harm. The error was in the reception of evidence on the only disputed fact in the case, and the judgment must be reversed, and the cause remanded."

In *Massey v. Bank*, 104 Ill. 327, on cross-examination of a witness who had testified with reference to the genuineness of the signature, a paper having the party's name written on it 16 times was shown to the witness, and he was asked to pick out the genuine signatures. The court ruled excluding the question, and the supreme court affirmed the ruling, and, after commenting on what is said in Wharton on Evidence, says:

"Without stopping to inquire as to the general correctness of this observation, and especially where the rule obtains, as in this state, that evidence of the genuineness of handwriting based on the comparison of hands is not admissible, we think that, at least in reference to test paper got up for the occasion, as in the present case, there was no error in not allowing the course of cross-examination proposed."

To the same effect is *Tyler v. Todd*, 36 Conn. 218. Whether the writing with which comparison is sought to be made must be admitted to be genuine by the party against whom it is used has never been decided by this court, nor is it necessary

in this case to decide that question, for here a number of writings not shown by evidence to be genuine were introduced in evidence. L. R. Sellers testified that he wrote the signatures to exhibits 1, 2, and 3. These appear to be notes signed by Harkness, payable to the Mound City bank, marked "paid," and, so far as the form of the papers is concerned, were well calculated to deceive. Exhibits Nos. 17 to 31 were offered in evidence as genuine signatures of Mr. Harkness. He himself testified to their genuineness.

It is contended by counsel for plaintiff in error that, under the rule as declared in *Shorb v. Kinzie*, supra, the declaration or admission of the defendant himself that they were genuine signatures is insufficient, but here Harkness not only admitted their genuineness, but testified that they were so. It is unnecessary, however, to decide whether exhibits 17 to 31, inclusive, were admissible on this showing as to their genuineness. Nos. 1, 2 and 3 were inadmissible under the rule declared in *Rose v. National Bank* and *Massey v. Bank*, above cited, which we think correctly declared the law. Other errors are alleged, but we do not deem them worthy of extended notice. The issue was fairly raised as to whether or not the plaintiff was a *bona fide* holder for value of the note sued on, and there was some testimony tending to support the defendant's theory. We perceive no other material error in the case. For the error in admitting the fabricated signatures and allowing plaintiff's witnesses to be cross-examined with reference to them, the judgment must be reversed, and the case remanded for a new trial.

All the Justices concurring.