HENDERSON E. MASSEY

*v.*

THE FARMERS' NATIONAL BANK OF VIRGINIA.

*Filed at Springfield September 28, 1882.*

1. PRACTICE—*dismissal of suit as to one of several defendants.* In a joint suit against several, where one of the defendants makes a defence personal to himself, it is the proper practice to enter a *nolle prosequi* as to him, if the plaintiff choose to do so. So, where three are sued upon a joint and several promissory note, and one of the defendants files the general issue sworn to, this will justify the plaintiff in dismissing the suit as to him.

2. Where suit is brought against three persons, as the makers of a joint and several note, and the suit is dismissed as to one making a personal defence, and the plaintiff then dismisses as to another pleading the general issue only, the remaining defendant will have no just ground of complaint, as he might have been sued alone, and such action may be sustained under section 24 of the Practice act, allowing amendments discontinuing as to any of several joint defendants.

3. SAME—*general objection to evidence—whether sufficient.* An objection to a question to an impeaching witness, calling for his belief of the testimony of the witness sought to be impeached, founded in part on interest in the cause, will be well taken without specifying the specific ground thereof. Asking a question as to belief of a witness, from his general reputation for truth, is so familiar and well established, that a general objection to a question calling for belief, founded partly on such reputation and partly on interest, will be considered as applying to the latter part.

4. EVIDENCE—*proof of handwriting—cross-examination.* To prove the handwriting of the alleged maker of a note, a witness was called who testified that some six years before he had seen him write, and that it was his

impression that the signature to the note was in such party's handwriting, but on cross-examination said he did not know that he could pick out his signature from a number, whereupon counsel handed the witness a paper having written on it the party's name sixteen times, and asked him to point out the genuine signatures, if any were such, and the court excluded the question, to which exception was taken: *Held*, such a test of the witness' knowledge was not admissible.

5. On the same question, as to the genuineness of the signature to the note, the plaintiff called another witness, who had been the clerk of the court, who testified that he had seen the defendant write once, which was when he signed his name to the affidavit to the plea, and that in his opinion the signature to the note was genuine. On cross-examination the witness said he could not say the capital letters H and E, in the note, were like the ones he saw the defendant make,—that there was some difference (describing the same) as to both letters. He was then asked: "Look at the capital letters, and see if they are like the ones on the note," and, "Is it not true the capital letters H, E and M, in the signature to the note, differ widely from the capitals in the signature you saw him write?"—to which questions the court sustained objections: *Held*, that while the court might properly have admitted the questions, it could not be said there was any material error in not doing so, as the witness had already testified as to two of the three letters.

6. WITNESS—COMPETENCY—*interest in result of suit—as affecting competency of wife.* Where an action on a promissory note is dismissed as to the principal maker of the note, and the cause tried as to a surety, the principal will have no such interest in the result of the suit as to render him incompetent as a witness for the plaintiff, at common law, and hence his wife is also competent in behalf of the plaintiff.

7. SAME—*credibility—impeachment.* In the impeachment of a party who had testified in his own behalf, witnesses were asked, after stating their knowledge of his general reputation for truth and veracity, "From that reputation would you, or not, in a case where he was personally interested, believe him under oath?" to which reply was made that if he was interested the witness would hesitate to believe him: *Held*, that it was error to allow the question to be answered against objection.

8. This mode of impeachment is confined to general reputation. Evidence of particular facts is not admitted, and the opinion allowed to be expressed by the impeaching witness is to be based solely on general reputation, and not on particular facts,—not upon general reputation and interest in the case.

9. SAME—*jury alone must pass on credibility of witness.* The effect of interest upon the credibility of testimony is solely for the consideration and judgment of the jury, and no witness should be allowed to pass upon it, either singly or in connection with any other matter. There should not be given the opinions of witnesses upon the discrediting effect of interest, in whole or in part, upon testimony.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Cass county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. MORRISON, WHITLOCK & LIPPINCOTT, for the appellant:

By the rules of the common law, the dismissal of the suit as to Henry C. Massey would not render him a competent witness, because of his interest in the result of the suit. 1 Greenleaf on Evidence, secs. 386, 393–7.

The wife, by the common law, is disqualified in any case in which her husband is, by reason of interest. *Illinois Central R. R. Co.* v. *Taylor*, 24 Ill. 323.

The recent legislation leaves the husband and wife in the same position as at common law, except when the litigation has reference to the separate property of the wife. Rev. Stat. 1874, p. 489, sec. 5. See, also, *Phares* v. *Barbour*, 49 Ill. 370; *Meyer* v. *Hartman*, 72 id. 442; *Hays* v. *Parmelee*, 79 id. 563; *Tripp* v. *Barker*, 78 id. 146; *Hawver* v. *Hawver*, 78 id. 412.

The court erred in allowing the impeaching witnesses to be asked: "In a case where he was pecuniarily interested, would you believe him under oath?" Greenleaf on Evidence, (12th ed.) sec. 461. See dissenting opinion of BREESE, J., in *Eason et al.* v. *Chapman*, 21 Ill. 36; also, *Crabtree* v. *Hagerman*, 25 id. 238.

The reputation sought to be affected must be that of the party at the time he testifies, and not at some remote time in the past. 1 Wharton on Evidence, sec. 563; *State* v. *Howard*, 9 N. H. 485; *Rogers* v. *Lewis*, 19 Ill. 405; *Aurora* v. *Cobb*, 21 Ind. 492; *Commonwealth* v. *Billings*, 97 Mass. 495; *People* v. *Abbott*, 19 Wend. 192.

To test the witness' knowledge of the handwriting of the party, it was proper to show him the list of signatures, on cross-examination, and ask him to state which of them were genuine, if any. Wharton on Evidence, sec. 710.

Messrs. KETCHAM & GRIDLEY, and Mr. L. H. HATFIELD, for the appellee:

The questions put to the witness as to the handwriting of the party, was in effect an attempt at comparison of signatures, which is not allowed. *Kernin* v. *Hill,* 37 Ill. 209.

Witnesses will not be allowed to compare a signature in question with one not admitted or established to be genuine. *Vinton* v. *Pierce,* 14 Mich. 287; *Ellis* v. *People,* 24 How. 356; *Henderson* v. *Hackney,* 16 Ga. 521; *Williams* v. *Drexel,* 14 Md. 56; *Van Wyck* v. *McIntosh,* 14 N. Y. 439; *Duvers* v. *Barker,* 40 Barb. 556.

Under the statute, a wife is competent to testify in behalf of her husband's interest, in a case where he is not a party to the record.

As to the point made as to the manner of the impeachment, we have but two remarks to make: First, the record shows no objection to the form of the question, when there was added to the inquiry whether the witness would believe appellant under oath, the words, "in a case where he was personally and pecuniarily interested;" second, the inquiry so put is restricted, and calls for an answer more favorable to the party impeached.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit brought by the Farmers' National Bank of Virginia, against Henry C. Massey, Henderson E. Massey, and George W. Laurie, upon a promissory note, purporting to have been executed jointly and severally by the defendants to the bank. The defendants severed in their pleas, Henry C. Massey pleading the general issue, Laurie the plea of the general issue, sworn to, and Henderson E. Massey filed a plea denying the execution of the note, verified by affidavit. On motion, the plea of Henry C. Massey was stricken from the files, and he was defaulted. Two trials were had, in

which, the jury failing to agree, they were discharged.    The plaintiff afterward dismissed its suit as to the defendant Laurie, and a third trial was entered upon, on the second day of which, on motion of the plaintiff, the default as to Henry C. Massey was set aside, and the suit was dismissed as to him, and subsequently a verdict was rendered against Henderson E. Massey for $4982.42, upon which, after overruling a motion for a new trial, judgment was entered, which was affirmed on appeal to the Appellate Court for the Third District, and an appeal taken by Massey to this Court.    There are various errors assigned.

As the action was brought jointly, it is insisted the dismissal of the suit as to Henry C. Massey and Laurie released the other defendant, Henderson E. Massey. ' In a joint suit, where one of the defendants makes a defence personal to himself, it is the recognized proper practice to enter a *nolle prosequi* as to him.    This would justify the dismissal as to Laurie, and though the dismissal as to Henry C. Massey might not come within this rule, yet we see no just ground of complaint for this action, on the part of Henderson E. Massey, inasmuch as the note being several, the plaintiff would have been entitled to have brought suit and obtained judgment against Henderson E. Massey alone.    Section 24 of the Practice act, too, (Rev. Stat. 1874,) provides that at any time before final judgment, amendments may be allowed discontinuing as to any joint defendant, and changing the form of action.

Henry C. Massey was the principal in the note, and his wife was received as a witness on the part of the plaintiff. It is urged there was error in this, that Henry C. Massey was interested in the result of the suit, and that the wife, by the common law, is disqualified in any case in which her husband is disqualified by reason of interest.    We fail to perceive the interest which would have rendered Henry C. Massey incompetent as a witness for the plaintiff at the

common law, and see no error in the admission of his wife as a witness. See *Sconce* v. *Henderson*, 102 Ill. 376, in favor of the competency of Henry C. Massey.

One Gatton, a witness for plaintiff, testified that some years before, he had seen Henderson E. Massey write, and that it was his impression that the signature of the name of said Massey to the note in question was in his handwriting. After then stating, on cross-examination, that it was six or seven years since he saw Massey write, and that he did not know whether he would know his signature now, and did not know that "he could pick out his signature in the bank," defendant's counsel handed the witness a paper having written on it the name "H. E. Massey" sixteen times, and asked the witness to point out the genuine signatures, if any were genuine. The court excluded the question, and exception is taken to this. It is urged that this question was proper on cross-examination, for the purpose of testing the knowledge of the witness, and as authority therefor reference is made to 1 Wharton on Evidence, sec. 710, where the author says: "There is little question that a witness may, on cross-examination, be tested by putting to him other writings not admitted in evidence in the case, and asking him whether such writings are in the same hand with that in litigation." Without stopping to inquire as to the general correctness of this observation, and especially where the rule obtains, as in this State, that evidence of the genuineness of handwriting, based on comparison of hands, is not admissible, we think that at least with reference to test papers got up for the occasion, as in the present case, there was no error in not allowing the course of cross-examination proposed. The same author, further on, in section 715, remarks: "We have already seen that a party can not make testimony for himself by writing specimens for the instruction of witnesses afterwards to be called, as to his handwriting. By the same reasoning a party can not be permitted to get up in this way

test papers to be used subsequently for comparison of hands."
And although the paper here offered was not to be used pro-
fessedly for comparison of hands, we think its admission
for the purpose declared would be alike objectionable.    See
*Griffits* v. *Ivery*, 11 A. & E. 322, and *King* v. *Donahue*, 100
Mass. 155.    In the former case, where there was the dis-
allowance of a like course of cross-examination for the pur-
pose of testing the witness' knowledge, COLERIDGE, J., said:
"We must not allow papers which are not evidence in the
cause to be let in for any purpose whatever."

One Finney, who had been clerk of the circuit court in
which the suit was tried, testified, on behalf of the plaintiff,
that he had seen defendant write once, and gave his opinion
that the signature of defendant's name was genuine.    On
cross-examination it appeared that it was the signature to
the affidavit to the plea of the defendant that the witness saw
written.    The plea, verified by the affidavit of the defendant,
was then produced and shown to witness, and the question
asked, "Look at the capital letters, and see if they are like
the ones on the note."    Objection to the question was sus-
tained, and the further question asked, "Is it not true the
capitals H, E and M, in the signature to the note, differ
widely from the capitals H, E and M, in the signature you
saw him write?"—to which objection was sustained.    These
rulings are assigned for error.    While we think the court
might properly enough have admitted these questions, we can
not say there was any material error in not doing so, at least
in view of the testimony which was given.    The witness had
stated before, in the cross-examination, that he could not say
the H in the note was like the one he saw defendant make;
that there was some difference, describing it; that he could
not say the E was like, or wholly unlike, the one witness
saw him write; that there was a discrepancy between them,
which he described.    This testimony was substantially a

response to the questions propounded. It was so, except as to the single letter M.

We perceive no error in the refusal to receive in evidence the notices which had been sent by the bank of the falling due of the note in suit, and one other. Their relevancy to the issue is not apparent.

Henderson E. Massey was a witness, in his own behalf, on the trial, and testified to the non-execution of the note by him. One Beard, called as a witness on the part of the plaintiff, testified that the general reputation of defendant, Henderson E. Massey, for truth and veracity was not very good. Against the objection of defendant's counsel, the court then permitted this question to the witness: "From that reputation would you, or not, in a case where he was personally interested, believe him under oath?" to which the witness made answer: "If Mr. Massey was interested, I would hesitate to believe him." To seven other witnesses, called by the plaintiff, the same questions, against defendant's objection, were allowed as the one to the witness Beard, who made substantially the same answer as he did. This is complained of as error. In *Frye* v. *Bank of Illinois,* 11 Ill. 369, this court laid down as the rule, that the proper question to be put to a witness called to impeach another is, whether he knows the general reputation of the person sought to be impeached among his neighbors for truth and veracity, and if this question be answered affirmatively, the witness may then be inquired of as to what that reputation is, and whether, from that reputation, he would believe him on oath. This latter inquiry as to belief is the English rule upon the subject, which we have adopted. Mr. Greenleaf, after stating the English rule, remarks that in the American courts perhaps the weight of authority is now against permitting the witness to testify as to his own opinions. This is a consideration against extending such rule of inquiry as to the witness' own belief beyond the limit for which it has the

sanction of authority.   This mode of impeachment is confined· to general reputation.   Evidence is not admitted of particular facts, and the opinion allowed to be expressed 'is to be based solely on general reputation, and not on particular facts.   The opinions which were permitted to be given in the present case were not founded upon general reputation alone, but upon general reputation, and interest in the case. Now, the effect of interest upon the credibility of testimony is solely for the consideration and judgment of the jury, and no witness should be allowed to pronounce upon it.   The naked question, whether, from defendant's interest in the case, the witness would believe him on oath, no one would pretend to justify.   There would be the same objection, though less in degree, to such an inquiry, based upon general reputation for truth, and interest in the case.   Both questions would be improper, as calling for an expression of opinion as to the effect of personal interest upon the credibility of testimony,—in the one case, as to the effect of interest alone; in the other, as to its effect in conjunction with another discrediting circumstance.   There should not be given the opinions of witnesses upon the discrediting effect of interest, in whole or in part, upon testimony.   Here, the question laid down by the books as the proper one in such case, whether, from defendant's general reputation for truth and veracity, the witness would believe defendant on oath, was not put; but the question put was, whether, from such reputation, they would so believe him in a case where he was personally interested, asking an opinion based in part on interest.   The question has not the warrant of authority, and was improper.

To what extent the consideration of personal interest influenced the opinions expressed, we have no means of knowing. The form of the answer, "if Mr. Massey was interested," etc., would indicate that defendant's interest in the case had controlling force.   We can not say defendant was not preju-

diced by the improper question put, and that the answer would not have been different and less unfavorable for the defendant had the proper question been asked. The credibility of defendant, as a witness, was a vital matter. Other witnesses testified as to their opinions of defendant's signature from having seen him write. Defendant knew whether the signature was his own or not, and testified from actual knowledge. . Improper testimony, unfavorable to his credibility, was calculated to do him great harm. Where a party gives testimony in his own cause, the admitting of many witnesses to give their opinions in any respect as to the effect of his personal interest in diminishing his credibility, is placing such testimony under an unfair disadvantage. We hold that there was error in the allowance of the question.

Appellee's counsel raise the point that the objection to the question was a general one, and that it should have been special, stating the particular ground of objection, in order to be availed of on error. Asking the question as to belief of a witness from his general reputation for truth, is so well established in this State as proper, and is so familiar in practice, that the court could not but have understood that the objection to the question was, in its inquiry as to belief, founded in part on interest in the cause. The ground of the objection was so palpable that we think there was no need of stating it.

For the error indicated, the judgment must be reversed, and the cause remanded.

*Judgment reversed.*