THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICHARD W. TURNER, Defendant-Appellant.

Fourth District   No. 4—92—0352

Opinion filed February 11, 1993.

Daniel D. Yuhas and Lori L. Mosby, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott H. Walden, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

This is an appeal by defendant Richard Turner from his conviction in the circuit court of Adams County of two counts of aggravated criminal sexual abuse (Ill. Rev. Stat. 1991, ch. 38, par. 12—16(d)) and one count of harmful material (Ill. Rev. Stat. 1991, ch. 38, par. 11—21(a)). Defendant was sentenced to concurrent terms of 14 years' imprisonment on the two counts of aggravated criminal sexual abuse and 364 days in the county jail on the count of harmful material. We affirm.

Defendant, 40 years of age at the time of the alleged offenses, was charged by amended information with fondling the breast of S.L. (a 15-year-old girl), and touching her vagina. He was also charged with exhibiting to S.L. photographs of himself in the nude and of a nude female. It was alleged that these incidents took place on December 9, 1991.

At the jury trial which concluded on March 13, 1992, S.L. testified that she knew defendant well, had been to his apartment on several prior occasions, and had spoken with him by telephone on numerous occasions. She considered him to be a big brother. On December 9, 1991, at defendant's request, she went to his apartment about 6:30 p.m. He was alone when she arrived. She and defendant sat together on the couch playing cards. Defendant went to the refrigerator and

came back with a beer and a carrot. Defendant told her he wanted to stick the big end of the carrot up her "pussy" and eat it out so he could feel the vibrations. She told him the idea was disgusting. Defendant said it was not disgusting and that a lot of people thought it was "kinky." S.L. broke the carrot in half and threw one of the pieces across the room. Defendant had talked in her presence on prior occasions about doing that to other people. S.L. was wearing blue jeans and a sweatshirt. Defendant got up to use the bathroom and then got a photo album from a dresser and brought it back to the couch. He had shown her the pictures in this album on prior occasions. The three pictures defendant showed her were of a nude female lying on a couch with one knee up showing her pubic area, of defendant's ex-wife in her underwear, and of a man's penis. She could not tell who the man was because the picture did not show his face. Defendant told her he would like to see her in the position of the nude woman on the couch. She told him she would never do that. He then told her he wanted to make love to her and "fuck" her. She told him "no," and he grabbed her arm with one hand and started fondling her breasts through her shirt with his other hand. Defendant then attempted to stick his fingers up S.L.'s vagina through her jeans. She could feel defendant's fingers in her vagina. While this was happening, S.L. told defendant to stop and tried to get away from him. Defendant grabbed her arm hard, bruising it, and pulled her back down on the couch. After she continued struggling and screaming for him to stop, defendant let go of her and told her that if she told anyone about what had happened he would kill her. This frightened her. Defendant told her to leave about 8:30 p.m.

Defendant called S.L. the next day and asked her to come to his apartment. She complied with this request because she feared that if she stayed away from him, defendant would think she was going to tell someone what had happened. Defendant accompanied her to a friend's house. Defendant also called her the next two days, requesting that she come to his apartment. She complied, again because she was afraid not to go. She was there for about 10 minutes and then left to get her friend. Defendant gave her a beer to take to her friend to' persuade the friend to accompany S.L. back to defendant's apartment. S.L. was in and out of defendant's apartment three times on that day. The next day defendant again called her and she went to his apartment. She was there with defendant and some of her friends. On the next day, she went to defendant's apartment even though he did not request her to come. She and a friend stopped by there so she

could get cigarettes from defendant. The longest she was at defendant's apartment by herself after December 9, 1991, was 10 minutes.

S.L. had a conversation with Officer Jim Fitch of the Quincy police department on December 10, 1991, at his office. She admitted that he asked her about any sexual contact with defendant and that she had denied anything had occurred because she was afraid of defendant. She also admitted she had lied to a friend, Becky Versimac, about how she received the bruise on her arm. On December 13, 1991, she talked again with Fitch and told him what defendant had done to her. She was in tears and upset at that time. She decided to tell him because she could not handle it any longer.

R.T. Finney of the Quincy police department testified as to a search warrant executed at defendant's apartment. The officers found the photo album and the three photographs mentioned by S.L. in her testimony. Finney testified that they had identified the headless male in the photograph as being defendant. This conclusion was based on similar photos found in the apartment showing defendant's face and the unusual placement of certain tattoos observed in photographs of defendant's groin area in all the photos.

Fitch testified that he had been a police officer for the City of Quincy for 17 years. For the last 2½ years he had been an investigator assigned to the juvenile division. He handled both juvenile offenders and juvenile victims. He participated in the search of defendant's apartment. He found a broken carrot in the kitchen trash can, along with other carrots, other food, and beer cans. There was only one broken carrot in the trash. Fitch also testified as to his interviews with S.L. At the first interview on December 10, 1991, she denied any sexual contact with defendant. At the second interview on December 13, 1991, she was upset and crying.

Fitch testified that when he first joined the police force he received training in the area of child sexual abuse victims. For the last 2½ years he had worked exclusively with juveniles. The majority of the crimes he had investigated during that time were sex crimes. He received ongoing training during that time on a broad range of subjects related to juveniles. He deals with child sexual abuse victims on a weekly basis. He testified that based on his training and experience, it is not unusual, and it is even normal, for children who are victims of sexual abuse to deny, at the first interview, that there has been any sexual contact or to tell only a portion of the story. Fitch also testified that S.L. told him she had also denied to one of her friends that sexual contact had occurred.

The parties stipulated to the testimony of Becky Versimac, a good friend of S.L., that S.L. had told Versimac that she received the bruise on her arm when a woman grabbed her on December 10, 1991.

Paula Thomas testified for defendant. She testified that she had been a friend of defendant's for 11 years. She said she and defendant were together at her house in Quincy on December 9, 1991, from about 4 p.m. until about 8:30 p.m. They were watching movies, eating pizza, and drinking soda. She remembers the time because her daughter was dropped off at her house about a half hour after defendant left. Thomas admitted that her daughter is dropped off at her house about five or six times each week. When defendant left, she assumed he took a cab home. Thomas and defendant were together the night before he was arrested for tampering with a car. Her mother told her about defendant's arrest for this tampering. Her mother had been told this by someone who had either heard it on the radio or read it in the newspaper. Thomas was interviewed by Officer Fitch. She denied it when the prosecutor asked her if Fitch had told her that defendant's arrest for tampering had not been in the newspaper or on the radio and, when told this, she said the way she remembered the date was by talking with defendant several times since his arrest for the instant offenses. Thomas then admitted that this was in fact the way in which she was able to remember the date defendant was at her house.

Thomas testified that defendant told her that he had taken a cab to her house and he was taking a cab home, but she did not know whether he did. She denied telling Fitch that defendant definitely had taken a cab home between 8 and 8:30 p.m. She admitted Fitch told her in their interview that there were no cab company records showing defendant was picked up at her house or taken to his house on that evening. She also admitted talking to defendant by telephone since the interview with Fitch. She claimed she had difficulty communicating with Fitch and that he was trying to trip her up.

On rebuttal, Fitch testified that Thomas had led him to believe that her mother had told her of defendant's tampering arrest on December 10, 1991, and that when Fitch informed Thomas that defendant would not have been arrested that day, she said she was not sure. She then told Fitch that she had had several conversations with defendant and this was how she had remembered the date. Thomas also told him that she was "100 percent sure" that a cab had pulled up to her house and picked up defendant that evening when he left.

Larry Clair, dispatcher for Deluxe Cab Company, testified there is only one cab company in Quincy and that he and the other dispatchers

are required by city ordinance to record all calls they receive from customers. He stated the cab company records do not indicate anyone was picked up or dropped off either at Thomas' house or at defendant's house between 3:09 and 11:17 p.m. on December 9, 1991.

The parties stipulated that on December 10, 1991, defendant was arrested for an offense that had nothing to do with the issues before the jury in the instant case. This was the tampering incident mentioned above.

The jury convicted defendant on all three counts, and the trial court entered judgment on the verdict.

Defendant was sentenced on April 28, 1992. We note that defendant filed no post-trial motion.

Defendant's first argument on appeal is that he was not proved guilty beyond a reasonable doubt where S.L.'s statements and behavior following the alleged incident were inconsistent with her later claim that he had assaulted her. We disagree.

A criminal conviction will not be reversed on appeal unless the evidence is so improbable or unsatisfactory that it raises a reasonable doubt as to the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276.) The relevant question is not whether this court believes that defendant is guilty beyond a reasonable doubt but, rather, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

■ While S.L.'s behavior and her denial about the incident to Officer Fitch might appear to some to be inconsistent with her later claim, she testified that defendant had threatened to kill her if she told anyone about the incident and that she was frightened of him. She admitted she had gone to defendant's house after the alleged incident. She testified the reason for this was that she was afraid defendant would think she intended to tell someone about the incident. S.L. testified that prior to the incident she and defendant had been good friends, that she had trusted him and looked upon him as a brother. Her testimony about her motives for acting as she did was not inherently unbelievable. S.L. also admitted that she had lied to Fitch the first time she spoke with him on December 10, 1991, but stated the reason for this was defendant's threat. She testified that she finally went back to Fitch on December 13, 1991, because she could no longer keep the incident to herself. In addition, the prosecutor cast doubt on defendant's alibi defense through his cross-examination of

Paula Thomas and through the testimony of rebuttal witnesses Fitch and Clair.

The credibility of the witnesses and the weight to be given their testimony are matters that are within the exclusive province of the jury. A reviewing court may not substitute its judgment for that of the jury in such matters. *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320; *People v. Ellis* (1978), 74 Ill. 2d 489, 496, 384 N.E.2d 331, 334.

■ Defendant also complains that there was no physical evidence to corroborate S.L.'s testimony. The short answer to this argument is that such corroboration was not required. In *People v. Schott* (1991), 145 Ill. 2d 188, 582 N.E.2d 690, our supreme court laid to rest the outmoded standard of review which had held that testimony of a victim of a sexual offense must be either clear and convincing or substantially corroborated in order to sustain a sex offense conviction, where the sufficiency of the evidence was challenged on appeal. The court held the reasonable doubt test articulated in *Collins* should govern on review of a defendant's challenge to the sufficiency of the evidence in a sex offense case. *Schott*, 145 Ill. 2d at 203, 582 N.E.2d at 697.

■ Defendant's last argument asserts Officer Fitch was not an expert and the trial court erred in allowing him to testify that child victims of sexual offenses normally deny initially that an offense has occurred. Defendant believes this error was compounded when the prosecutor argued in closing that S.L.'s initial denial that the offense had occurred was consistent with normal behavior of child victims of sexual abuse.

Defendant has waived these arguments. Failure to raise an issue in a written motion for a new trial results in waiver of that issue on appeal. (*People v. Berry* (1984), 99 Ill. 2d 499, 503, 460 N.E.2d 742, 744; *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129.) Defendant here failed to file such a motion. In addition, his counsel did not object to the prosecutor's statement in closing argument. Both an objection and a written post-trial motion raising the issue objected to are required to preserve the issue for review. *Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130.

Nor do we find that plain error occurred. This doctrine is a narrow and limited exception to the waiver rule. (*People v. Pastorino* (1982), 91 Ill. 2d 178, 188, 435 N.E.2d 1144, 1149; *People v. Gilman* (1983), 113 Ill. App. 3d 73, 75, 446 N.E.2d 595, 596.) To be plain error, the substantial rights of the defendant must be affected or the evidence must be closely balanced. (*People v. Griffiths* (1983), 112 Ill.

App. 3d 322, 326, 445 N.E.2d 521, 526; *People v. Pickett* (1973), 54 Ill. 2d 280, 282-83, 296 N.E.2d 856, 858.) Here, defendant has pointed to no abridgment of any substantial right. Moreover, after reviewing the entire record, we do not find the evidence closely balanced. We therefore find that defendant has waived these issues for our review.

However, even were we to find that review of these issues had not been waived, we would find no error in either instance.

Defendant initially objected to Fitch's testimony on the basis that he was not qualified to give an opinion on the behavior of child sexual abuse victims. The trial court sustained this objection, and the prosecutor then proceeded to elicit testimony about Fitch's background, training, and experience as noted above.

Fitch then testified as follows regarding the behavior of child victims of sexual abuse:

"Q[.] [Prosecutor:] Detective Fitch, again, based on your years of experience in this area, the training you have had, and your own personal experience with these kind of kids, is there anything unusual in your first contact with them for them to deny that there has been sexual contact?

[A.] [Defense counsel]: The same objection as before, Judge.

THE COURT: All right. I will overrule the objection.

[Q.] [Prosecutor]: Is there anything unusual about that?

A[.] [Fitch:] Children who are victims of sexual abuse deal with it differently than adults do. Many times they are embarrassed. They don't understand the same, which we do, the sexual abuse, the sex crimes. Because of that, they are many times hesitant, reluctant or too confused to tell exactly what did go on.

Q[.] So, it is unusual for them to deny on that first contact?

A[.] No, it is not. I have testified to that in other cases that it is not unusual.

Q[.] Does it approach the norm?

A[.] I would say it is normal that at the first interview they either deny or don't tell everything that they know."

Effective January 1, 1989, Illinois law allows admission, as evidence, of the testimony of an expert qualified by the court relating to any recognized and accepted form of post-traumatic-stress syndrome. (Ill. Rev. Stat. 1991, ch. 38, par. 115—7.2.) Prior law required the expert to be a behavioral psychologist, psychiatrist, or physician. (See Ill. Rev. Stat. 1987, ch. 38, par. 115—7.2.) The amendment eliminated this requirement. As this court has previously noted, the legislature, in amending the statute, recognized that persons other than those in

the medical profession may provide reliable testimony on post-traumatic-stress syndrome. *People v. Wasson* (1991), 211 Ill. App. 3d 264, 271, 569 N.E.2d 1321, 1326.

Defendant cites cases dealing with post-traumatic-stress syndrome and rape-trauma syndrome (RTS) (one form of post-traumatic-stress syndrome) and insists that Officer Fitch's testimony was in fact expert testimony on RTS. We disagree.

RTS is generally accepted to be a common reaction to a sexual assault. That syndrome includes a broad range of physical, psychological, and emotional reactions to such an assault. (*People v. Server* (1986), 148 Ill. App. 3d 888, 897-98, 499 N.E.2d 1019, 1026.) However, Officer Fitch did not testify concerning any complex psychological theories or models. He merely stated, in simple terms, his opinion as to the tendency of child sexual abuse victims to initially deny that they have been sexually abused. In that sense, this case is similar to *People v. Wilder* (1986), 146 Ill. App. 3d 586, 496 N.E.2d 1182. In *Wilder*, a child protective investigator from the Illinois Department of Children and Family Services was allowed to testify as an expert to characteristics most often observed in families where child sexual abuse typically occurs. The investigator testified he had investigated incidents of alleged child sexual abuse in more than 300 families. He based his opinion on a one-hour interview with the victim and her mother and an interview with defendant. On appeal after conviction, defendant argued the investigator was not qualified to give an opinion as to these characteristics. This court rejected the contention, noting the investigator did not testify to complex or highly technical matters, but rather simply stated the characteristics of families where child sexual abuse typically occurs. The basis for his testimony was his experience with such families. *Wilder*, 146 Ill. App. 3d at 590, 496 N.E.2d at 1184-85.

In the instant case, Fitch merely stated that it is not unusual, or it is normal, for children who have experienced sexual abuse to initially deny that abuse when confronted. It was clear that he based his opinion on his experiences with child sexual abuse victims. His experience with such victims extended over the prior 2½ years during which he worked exclusively with such victims and with juvenile sex crime perpetrators. He also had training in this area within the police department. It was not error for the trial court to find that Fitch was qualified to give such an opinion.

An expert may be qualified on the basis of experience alone. (*People v. Douglas* (1989), 183 Ill. App. 3d 241, 254, 538 N.E.2d 1335, 1343.) A witness may be allowed to testify as an expert if his experi-

ence and qualifications give him knowledge not common to lay persons and where such testimony will aid the trier of fact in reaching a conclusion. (*People v. Jordan* (1984), 103 Ill. 2d 192, 208, 469 N.E.2d 569, 576.) This court has previously held that behavior of children who have been sexually abused is not within the knowledge of ordinary lay persons and that such information would be of benefit to a jury in a child sexual abuse case. (*People v. Coleman* (1990), 205 Ill. App. 3d 567, 585, 563 N.E.2d 1010, 1021, *appeal denied* (1991), 136 Ill. 2d 547, 567 N.E.2d 335.) The determination of whether a witness is qualified to testify as an expert is within the trial court's discretion, and its ruling will not be disturbed absent an abuse of that discretion. (*People v. Bradley* (1988), 172 Ill. App. 3d 545, 550, 526 N.E.2d 916, 920.) We find no abuse of discretion in Fitch's testimony in the instant case. We note that Fitch was also a witness to the victim's statements in *People v. Jones* (1993), 241 Ill. App. 3d 228, and there gave similar testimony regarding victim's initial denials. In *Jones*, unlike here, Fitch was not qualified as an expert, but the evidence was admitted even though he testified as a lay witness. Since there was no error in the admission of this testimony, there was no error in the prosecutor's comments on that evidence in his closing argument.

Defendant's conviction and sentence are therefore affirmed.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.