THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVE JONES, Defendant-Appellant.

Fourth District No. 4—92—0219

Opinion filed February 11, 1993.

GREEN, J., specially concurring.

Daniel D. Yuhas and Gloria Ann Morris, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott H. Walden, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and Dale M. Wood, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Following a jury trial in the circuit court of Adams County, defendant was convicted of one count of aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(b)(1)) and two counts of aggravated criminal sexual abuse (Ill. Rev. Stat. 1991, ch. 38, par. 12—16(c)(1)(i)). The trial court sentenced defendant to 20 years' imprisonment for the aggravated criminal sexual assault, to be served consecutively to concurrent four- and seven-year sentences for the convictions of aggravated criminal sexual abuse. Defendant appeals, claiming (1) the trial court erred in allowing a police officer, who had not been qualified as an expert, to testify concerning the behavioral characteristics of child sexual abuse victims; (2) he was denied a fair trial because both the trial court and the prosecutor improperly attempted to define the reasonable doubt standard to the jury; and (3) the prosecutor's comment during his opening statement that he was embarrassed by the nature of the case served only to inflame the jury and thereby deprived defendant of a fair trial. We affirm.

In August 1991, defendant was taken into police custody for an unrelated offense. The victim, defendant's 12-year-old stepdaughter R.M.B., was placed in a foster home because her mother was in St. Louis at the time. R.M.B. met with Terri Allen, an employee of the Illinois Department of Children and Family Services (DCFS), who asked R.M.B. whether defendant had ever touched her. She replied that he did a long time ago but had not done so since then. R.M.B. was then interviewed by Detective Fitch, an investigator with the juvenile division of the Quincy police department.

When Fitch asked R.M.B. whether her stepfather had had any sexual contact with her, she replied that he had not. According to Fitch, she said that in the past she had reported there had been sexual contact, but nothing had been done about it. At the time this interview took place, defendant was being held in police custody in the juvenile office about 30 feet away from R.M.B.

Later that month, R.M.B.'s mother returned, and they lived together in the family home while defendant remained in custody. She spoke again with Terri Allen of DCFS and, this time, told her that defendant had touched her more recently than she had let on earlier, but gave no details of the incident. She repeated this to Detective Fitch and, again, gave no details. She met with Fitch again in late August and, this time, told him that defendant had forced her to perform oral sex and gave some details of the incident. In January 1992, she met with the prosecutor and provided him with a detailed description of the incidents that formed the basis of his convictions in this case.

At trial, R.M.B. testified that, when her stepfather first began abusing her, he threatened to kill her if she ever told anyone about it. Although defendant had never hit her, she had seen him strike her mother and her brother. She stated that she was afraid of him. When asked why she did not tell police about the sexual abuse, she replied that she was scared because she did not know whether he was coming home or not. She thought he might kill her if she told. A few days after the initial interview, she was more willing to speak because she knew he was not coming home and would stay in jail.

Next, the State called Detective Fitch to the stand, but did not submit him as an expert witness. He testified that he had been a police officer for 16 years. For the last 2½ years, he acted in the capacity of an investigator in the juvenile division, where he handled cases where juveniles are victims as well as investigations of abuse. Prior to this, he was in the detective division of the Quincy police department for 2½ years, where they handled juvenile investigations whenever the juvenile officer was busy. During redirect examination, defense counsel objected to any questions which might require Fitch to "generalize" about other cases. A side bar was held out of the hearing of the jury and court reporter. The objection was overruled and the following exchange occurred:

"[State's Attorney]: Q[.] Detective Fitch, based upon your years of experience as a juvenile officer and then your years with the Detective Division, when you would interview juvenile witnesses, have you found it unusual in your first meeting with

an alleged sexual abuse victim for them [*sic*] to deny that there had been sexual contact?

[Fitch]: A[.] I find that that's the norm."

This exchange was emphasized in closing argument, where the prosecutor stated:

"You know, you can hope that if something like this happens to a young girl that she will immediately call the police so that intervention can be made and that that type of conduct will stop, but that's not the way it happens in the real world, sad as it is. Each child copes in his or her own way, and [R.M.B.] had her way of coping. As you know, it is not only not unusual that in initial contacts with law enforcement authorities that a child will not tell of the sexual molestation, but it is the norm.

\* \* \*

\*\*\* He was safely locked away, and as [R.M.B] has told you, the fear has dissipated. And given that it is the norm for children under those circumstance[s] to not tell on the first encounter, particularly when the Defendant is there in the same building, particularly when she has been threatened by him and is afraid of him and has seen the Defendant do violence to others in her presence, not contradicted by him in any way, that is easy to understand."

Defendant claims the trial court erred in allowing the prosecutor to elicit expert testimony from Detective Fitch, who was merely a lay witness. Defendant argues there is no showing on the record that Fitch had the experience or training necessary to qualify him as an expert. Also missing is any indication of the number of sexual abuse cases he had handled upon which he based his opinion. Allowing Fitch to comment on the behavior of child sexual abuse victims, defendant argues, was tantamount to a submission of expert psychological evidence of rape trauma syndrome in children. Defendant claims the harm was compounded because the prosecutor overstated the evidence in his closing argument, using it as though it was expert psychological testimony.

In denying defendant's post-trial motion, the trial court acknowledged that Fitch was not offered as an expert witness. The trial court found the testimony permissible because "it was on a limited area which would be within the knowledge of an officer of the law experienced in this type of investigation." The court went further and took judicial notice of the fact that it is common for child sexual abuse victims not to report the incident immediately, stating that it is a "mat-

ter within the common knowledge of anybody who works within the system." The court concluded:

> "[S]ince [the testimony] was on a very limited matter, it was not delved into in greater detail nor did he cross over the line from being a police officer to somehow being a hybrid expert on child sexual assault but [the testimony] was limited in its extent. I see no problem at all with that testimony coming in and being allowed and being considered by the jury."

The doctrine that lay witnesses generally must give only "facts" and not their inferences, conclusions, or opinions has been described as the clumsiest of all the tools furnished the judge for regulating the examination of witnesses. E. Cleary, McCormick on Evidence §11, at 23 (2d ed. 1972).

> "A clear line between fact and opinion is impossible to draw. In a sense all testimony to matters of fact is the conclusion of the witness formed from observed phenomena and mental impressions." M. Graham, Cleary & Graham's Handbook of Illinois Evidence §701.1, at 482 (5th ed. 1990).

The latter treatise summarizes the necessary requirements for the admission of opinion evidence. First of all, the witness must lay a foundation establishing personal knowledge of the facts that form the basis of the opinion. Where required, a foundation must also be laid as to the witness' personal knowledge of facts to which the observed facts are being compared. The opinion must also be one that a person could normally form from observed facts. Finally, testimony of a lay witness in the form of an opinion may be introduced only if helpful to a clear understanding of his testimony or the determination of a fact in issue. M. Graham, Cleary & Graham's Handbook of Illinois Evidence §701.1, at 482-83 (5th ed. 1990).

Wigmore gives assistance in deciding this issue, when the opinion objection is applied to lay witnesses "who concededly have *no greater skill* than the jury in drawing inferences from the kind of data in question." (Emphasis in original.) (J. Wigmore, Evidence §1924, at 32 (Chadbourn rev. ed. 1978).) However, the cited section recognizes that it must be possible to provide the "data" to the jurors. Observations of the *initial* responses of those sexually abused could not be repeated before the jurors, and we cannot expect the jurors to have experienced such observations. Treating Fitch as a "lay witness," the trial court did not err in allowing him to relate this relevant testimony. Regardless, the testimony might well be termed to be that of an expert. In a separate case, where Fitch was also the witness and where additional foundation was present, we so held. Testimony of a

similar nature was at issue, the same type of offense was involved, and the case was tried within two months of the trial in this case. *People v. Turner* (1993), 241 Ill. App. 3d 236.

 Detective Fitch testified to 16 years' experience as a police officer, the last 2½ years spent as an investigator in the juvenile division. His personal knowledge of a familiarity with the reactions of juvenile sexual abuse victims was adequately established. His opinion was one that a person could normally form from observed facts. This element is even more firmly established by the fact that Fitch's limited opinion is, as stated by the trial court, within the common knowledge of anyone who regularly deals with juvenile problems. Finally, the opinion was clearly helpful to an understanding of his own testimony and that of R.M.B. We find no error in allowing the jury to hear Detective Fitch's opinion.

We agree with defendant that the prosecutor's statements in closing argument presented the opinion in a somewhat different light. In stating flatly that "it is the norm" for children to initially deny sexual contact, without reference to the basis of Fitch's opinion, the prosecutor appeared to be asserting a tenet of behavioral theory. In contrast, Fitch testified regarding concrete facts which he personally observed, not abstract ideas or theories.

Initially we note that defense counsel failed to object during closing argument and in the post-trial motion. Aside from the fact that the objection has not been preserved, we still find no overt attempt on the part of the prosecutor to frame Fitch's opinion in the guise of scientific theory. Furthermore, the jury had already been informed by R.M.B. that she delayed telling police about the crime because she feared for her safety. Fitch's opinion that this behavior is typical is neither surprising nor is it novel. Preceded as it was by R.M.B.'s testimony, the opinion adds little to the jury's understanding of R.M.B.'s motivation underlying her initial reluctance to tell the police. We find no substantial prejudice created by the prosecutor's encapsulation of Fitch's testimony.

 Next, defendant contends he was denied a fair trial because the trial court and the prosecutor improperly attempted to define the reasonable doubt standard to the jury. Before trial, the court stated to the jury:

> "Along the way, you'll probably be told, perhaps by the state's attorney, and there'll be comments about the fact that they don't have to prove the defendant guilty beyond every possible doubt or every shadow of doubt, whatever that means, but beyond a reasonable doubt."

In his closing argument, the prosecutor stated:

> "Beyond a reasonable doubt does not mean beyond all doubt. It does not mean beyond a shadow of a doubt. It means beyond a reasonable doubt, the same standard in every criminal case in every county in this country."

No objection was made to either comment, nor was either comment mentioned in the post-trial motion. We find the issue is waived on appeal. (*People v. Berry* (1984), 99 Ill. 2d 499, 460 N.E.2d 742.) Although the comments were improper, we do not believe they deprived defendant of a fair trial so as to invoke the plain error doctrine. The comments were not involved or likely to mislead the jury, nor did the trial court compound the error by giving an improper instruction. *People v. Gray* (1979), 80 Ill. App. 3d 213, 399 N.E.2d 206.

Finally, defendant contends the prosecutor denied defendant a fair trial by commenting in his opening statement that he was embarrassed by the nature of the case and the graphic images and language that would be presented to the jury. No objection was made at trial, nor was it mentioned in the post-trial motion. We find the issue waived on appeal. *Berry*, 99 Ill. 2d 499, 460 N.E.2d 742.

In describing the evidence to be heard in a case of this nature, the prosecutor is forced to use language and describe events which many jurors would find offensive. The prosecutor's remarks seem designed to disassociate himself with the language he is required to use. The plain error doctrine is a limited and narrow exception to the waiver rule. (*People v. Pastorino* (1982), 91 Ill. 2d 178, 188, 435 N.E.2d 1144, 1149.) We need not invoke the plain error doctrine unless the comments were so inflammatory that defendant could not have received a fair trial or so flagrant as to threaten deterioration of the judicial process. *People v. Owens* (1984), 102 Ill. 2d 88, 464 N.E.2d 261.

Affirmed.

KNECHT, J., concurs.

JUSTICE GREEN, specially concurring:

I concur in the decision to affirm and agree that no reversible error resulted from the admission of the testimony of Detective Fitch. However, I would analyze the issue slightly differently than does the majority.

To the extent Fitch's answer "I find that that's the norm" meant that on many occasions alleged sexual abuse victims had denied abuse on a first interview with him, the answer was a statement of fact as

to what he had heard. Any witness is competent to give such an answer. To the extent that the answer indicated that more often than not this happens when he interviewed such people, the answer would either still be one of fact or, at the most, the opinion which a lay person could give. He would be drawing an inference from his memory that more often than not it happened.

On the other hand, the definition of the word "norm" most nearly descriptive of the phenomena described here is "AVERAGE: as *** [to] a pattern or trait taken to be typical in the behavior of a social group." (Webster's Ninth New Collegiate Dictionary 806 (1990).) If Fitch's answer be taken as a statement that from his experience as an investigator he had learned that those in the field have found that such alleged victims are very likely to deny sexual abuse at the first interview even though the abuse occurred, the answer was an opinion which can only be given by an expert because the opinion would be based upon his training and experience and would be beyond the knowledge of the average person. *People v. Free* (1983), 94 Ill. 2d 378, 411, 447 N.E.2d 218, 234.

The making of a proper objection is usually necessary to preserve error in the admission of evidence. (*Casson v. Nash* (1978), 74 Ill. 2d 164, 171, 384 N.E.2d 365, 368.) Unless the grounds for the objection are obvious, the objection must be specific. (*Massey v. Farmers' National Bank* (1882), 104 Ill. 327; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §103.2, at 6 (5th ed. 1990).) The only objection made to the testimony involved here was that it asked the witness to generalize about other cases. No contention has been made that this testimony lacked relevance or materiality. No objection that the question would require the giving of any kind of an opinion was made.

If an objection had been made that the question called for an expert opinion and no foundation had been laid, the prosecutor could have proceeded to lay a foundation for the giving of such an opinion. In any event, some foundation was laid in that Fitch testified as to his experience in handling cases of this nature. Any error in the admission of the testimony did not amount to plain error which would not have been waived by lack of a proper objection.